### In re DOUGLAS.

**Patent Appeal No. 2654.**

Court of Customs and Patent Appeals,
March 31, 1931.

Edward H. Cumpston, of Rochester, N. Y., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the action of the Examiner in rejecting claims 1, 2, 3, 5, and 6, and 9 to 13, inclusive, of appellant's application as failing to define invention in view of the prior art. Claims 2 and 10 are illustrative of the claims in issue, and read as follows:

"2. The process of preparing pectin from fruits comprising removing the natural sugar therefrom, processing the remaining pulp in the presence of a solvent to obtain the pectin in solution, converting the starch in the solution by the action of a suitable diastatic enzyme, concentrating the resultant solution, precipitating the pectin therefrom with alcohol and drying the precipitate."

"10. A dry pectin, prepared by alcohol precipitation from a pectin solution from which the natural starch has been removed by the action of a suitable enzyme."

Four claims appear to have been allowed, but they are not contained in the record.

The references relied upon are as follows: Douglas, 1,235,666, August 7, 1917; Huber, 1,410,920, March 28, 1922; Crawford, 1,507,338, September 2, 1924; Leo, 1,513,615, October 28, 1924; Boylik, 1,393,660, October 11, 1921; Goldthwaite on Jelly Making, J. Ind. & Eng. Chem. June 1909, page 239, lines 10 to 14, second column.

Claims 1, 2, 3, 5, and 6 relate to a process for securing dry pectin from fruits, and

claims 9 to 13, inclusive, are for the product of that process.

The object of the invention, as stated by the appellant in his specification, is as follows:

"My invention relates to jellyfying substances and more particularly to dry pectin obtained by alcohol precipitation, and to methods of preparing the same from fruits, the chief object being to provide a dry pectin in a more pure and convenient state, especially as regards the presence of starch, as well as a thoroughly practical and efficient method of preparing the same on a commercial scale."

One of the reference patents, No. 1,235,666, was issued to appellant, and relates to jelly making products and a process for producing the same, in which vegetable material is treated to remove the natural sugar therefrom, and the remaining pulp is processed in the presence of a solvent to extract the pectous substances. The pectous liquor is treated to convert the starch by means of a suitable diastatic enzyme. The resulting solution is concentrated in a liquid form. Appellant, in the specification of said patent, states:

"If desired all of the moisture may be removed and the pectous liquor reduced to a soluble powder. * * *"

The reference Leo, No. 1,513,615, relates to a method of obtaining a dry powder jelly base containing pectin; the object of the invention being "the production of a purified pectin in powdered form which is free from acid or sugar or any other foreign substance." The specification further states: "This dry powder is a pectous body comprising from 95% to 100% of the following ingredients: pectin, pectose, a small amount of pectase, and some calcium pectate." The pectin is obtained in a solution which may then be concentrated. The specification further states:

"This concentrated solution is then treated with alcohol, which results in the precipitation of the pectous bodies. This alcohol may be ethyl or methyl alcohol or a combination of both, as desired. Preferably three gallons of alcohol are added to each gallon of concentrate. The solid pectous bodies precipitated from the solution are separated therefrom, preferably in a centrifugal machine, and are then perfectly dried by the well-known atomizing process, which results in the blowing of the material into a room, whereby it immediately forms into a dry powder, which can be collected and sold."

The reference "Goldthwaite on Jelly Making" discloses the isolation of pectin by making a pectin solution in which the pectin is eventually obtained in solid form by precipitation by alcohol. The process of this precipitation is described as follows:

" * * * A given volume of the cold, filtered (previously boiled) fruit-juice was added drop by drop by means of a separatory funnel to an equal volume of alcohol, stirring constantly; the mixture was allowed to stand over night in a cold place and then the precipitated jelly-like mass of pectin was separated from the liquid by filtering off through very fine cotton cloth stretched tightly over the mouth of a 4-liter jar. The liquid was worked out of the mass by means of a spatula. Repeated re-solution and re-precipitation of the pectin improved its purity. The pectin so obtained was a very stable, nearly colorless, transparent solid. * * * "

It is not necessary to consider the other references relied upon.

All of the appealed process claims were rejected on the patent to Douglas on the ground that it is not inventive to precipitate, by the use of alcohol, the pectin from the solution there shown, in view of either Leo or Goldthwaite. Claims 9 to 13, inclusive, for the product, were rejected on the ground that they improperly define the product by the process of making it.

Appellant concedes that the process of preparing pectin from fruits, comprising the removal of the natural sugar therefrom and processing the remaining pulp in the presence of a solvent to obtain the pectin solution, which are elements in one form or another in all of the process claims here involved, is fully shown in the Douglas reference. He also concedes that the element of said process claims—"converting the starch in the solution by the action of a suitable diastatic enzyme"—is also disclosed in the Douglas patent, but argues that, as there disclosed, said step of the process was for an entirely different purpose than that involved in the present application. The Douglas patent does not disclose the remaining element of the claims, to wit, "precipitating the pectin therefrom with alcohol and drying the precipitate," as it is stated in claim 2, above quoted.

Appellant contends in his brief as follows:

" * * * It was Douglas only who conceived the idea of what may be termed a two-

stage purification process involving the production first of a purified solution and the extraction from that solution by precipitation of pure pectin and nothing else. No one else had ever devised this method nor produced the highly purified starch-free pectin which is the product.

"The evolution of this process was not the simple, off-hand matter which was evidently all that the Examiner saw in it. Many minor problems had to be solved before accomplishing success. One of these was the recognition of the fact that the 10 to 25% starch content would be precipitated along with the pectin. To overcome this difficulty he conceived of the use of fermentation by a diastatic enzyme, not for the purpose of preventing starch from reacting with fruit tannins, but for the different purpose of rendering the starch soluble in alcohol so that it would not be precipitated. Another difficulty was that the addition of the alcohol to the solution, as taught by the prior art, yielded a pectin precipitate of an impracticable form to handle. It was necessary for him then to devise the step of adding the solution to the alcohol and below its surface, as well as the subsequent repeated dehydration of the precipitate with alcohol, which the Patent Office has recognized as invention by the allowance of some of the claims. These and many other problems beset the path of the inventor but they passed unnoticed in the superficial consideration of the case by the Patent Office, except for the claims allowed on the final step of dehydration which are by no means commensurable with the invention."

We think that the Douglas patent clearly discloses all of the elements of the process claims here in issue except that which covers the precipitation by means of alcohol. The fact that the disclosure in the Douglas patent of converting the starch in the solution by the action of a suitable diastatic enzyme was for a different purpose than that stated in the present application is, we believe, immaterial, because he showed how the starch in the solution could be converted by the action of a suitable diastatic enzyme, leaving the resultant solution free from starch.

We think the process of precipitation shown by the Leo reference, and by the Goldthwaite publication, so far as the claims here in issue are concerned, is essentially the same as the process of precipitation shown in appellant's application, and the question arises whether it constitutes invention to apply, as a further step to the process shown by the

Douglas patent, the process of precipitation shown by Leo and Goldthwaite.

Appellant insists that the process of precipitation shown by Leo, applied to the solution obtained by Leo through carrying out the various steps of his process, results in a 10 per cent. to 25 per cent. contamination by starch, and further that his final product contains not pectin alone, but pectose, pectase, and calcium pectate as well. In this we think appellant is correct, but it is also true that the precipitation process disclosed by Leo, applied to the process disclosed in the Douglas patent, would, so far as the claims here in issue are concerned, result in a product in all respects comparable to the product produced by appellant. The difference in purity between the product of appellant and that of Leo is due, not to the process of precipitation here involved, but to the character of the respective solutions before the precipitation process is applied. It is our opinion that any skilled chemist, desiring to precipitate to a dry state the pectin in a solution such as shown by the Douglas patent, and having knowledge of the disclosure of the Leo patent and of the Goldthwaite publication, would apply the precipitation method there disclosed to said solution, and that this would not require the exercise of the inventive faculty.

Appellant shows that the validity of appellant's prior patent has been established in the courts and contends that the decision rendered by the Court of Appeals for the Second Circuit in the case of Douglas Pectin Corporation v. Armour & Co., 27 F.(2d) 814, shows the patentability of the claims here in issue. We have carefully examined this opinion, and it is sufficient to say that the questions before us were in no way involved in said case.

We hold that there is no invention, in view of Leo and Goldthwaite, in adding to the process disclosed by the Douglas patent the precipitation of pectin from the solution there shown by means of alcohol and drying the precipitate.

With regard to the product claims, they are all limited by one or more of the steps of the process involved in the process claims. It is not clear to us that the product secured could not be described without reference to appellant's method; but, however this may be, we agree with the Board of Appeals that the product claims are not patentable.

The decision of the Board of Appeals is affirmed.

Affirmed.